1

2

3

4

5

6

7

8                **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   GREG MARTIN,                  )   CV 15-7355-RSWL-FFMx
                                   )
13                                 )
               Plaintiff,          )   **RULING AND ORDER Re:**
14                                 )   **BENCH TRIAL**
         v.                        )
15                                 )
                                   )
16   AETNA LIFE INSURANCE          )
     COMPANY, FEDERAL EXPRESS      )
17   CORPORATION SHORT TERM        )
     DISABILITY PLAN, FEDERAL      )
18   EXPRESS CORPORATION LONG      )
     TERM DISABILITY PLAN, and     )
19   DOES 1-10, Inclusive,         )
                                   )
20   _____Defendants._____    )

21        On November 15, 2016, the above matter commenced in

22   a bench trial before this Court.  Plaintiff Greg Martin

23   ("Plaintiff") filed this Employee Retirement Income

24   Security Act of 1974 ("ERISA") disability benefits

25   action against Defendant Aetna Life Insurance Company

26   ("Aetna"), Federal Express Corporation Short Term

27   Disability Plan ("STD Plan"), and Federal Express

28   Corporation Long Term Disability Plan ("LTD Plan")

                                   1

(collectively, "Defendants"),[1] after Aetna denied him short-term disability benefits under the STD Plan provided by his employer, Federal Express Corporation ("FedEx").

Having received, reviewed, and considered the evidence presented, as well as the Parties' arguments at trial, the Court makes the following ruling: **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment be entered in favor of Defendants.

## I. FINDINGS OF FACT

Plaintiff worked for FedEx as a "Sr. Service Agent/Non-DOT." Admin. R. ("A.R.") at 0215, ECF No. 31. Some of his essential job duties and responsibilities were assisting customers, tracking packages, preparing reports, keying alphabetic and numeric information into keypads, and checking paperwork. Id. at 0215-16. Under the "knowledge, skills, and abilities" section, Plaintiff required an "ability to lift 75 lbs . . . ability to maneuver packages of any weight above 75 lbs . . . with appropriate equipment and or assistance from another person." Id. at 0216.

## A. STD and LTD Benefits Plans

FedEx established a group benefits plan to provide Plaintiff with benefits in the event of a short-term or

---

[1] In this Order, the Court will refer to Aetna when discussing arguments raised by all Defendants, as Aetna was the defendant primarily responsible for the denial of Plaintiff's short-term disability benefits giving rise to the instant action.

long-term disability.  _Id._ at 0343, 0543.  The FedEx
STD Plan is self-funded; FedEx pays benefits from its
own funds, but retains an insurance company, Aetna, to
administer claims for STD Plan benefits.  _Id._ At 0344.
Benefits are payable at the rate of 70% of basic weekly
pay before disability, less any offset.  _Id._ at 0417,
0418.  The benefits are paid for up to 26 weeks that
the employee remains disabled.  _Id._

The employee has the burden of establishing a
disability.  _Id._ at 0566.  The STD Plan defines
disability as an "Occupational Disability;" that is, a
"medically-determinable physical impairment" that
prevents the employee from performing the duties of his
regular occupation.  _Id._ at 0548.  The disability
should be "substantiated by significant objective
findings which are defined as signs which are noted on
a test or medical exam and which are considered
significant anatomical, physiological, or psychological
abnormalities which can be observed apart from the
individual's symptoms."  _Id._ at 0545-46.  Proof of
disability is based on "significant objective findings
like: medical exams, test results, X-ray results, and
observation of anatomical, physiological, or
psychological abnormalities."  _Id._ at 0422.  But "pain
alone is not proof of disability."  _Id._  Benefits are
denied when the provided medical information fails to
support the disability.  _Id._ at 424.

Aetna has authority to "interpret the Plan's

provisions in its sole and exclusive discretion in accordance with its terms with respect to matters properly brought before it . . . including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan." Id. at 0501. In denying a claim for benefits, Aetna shall provide the claimant with written notice setting forth the specific reasons, refer to pertinent plan provisions supporting the denial, and describe necessary additional material to perfect the claim. Id. at 0500.

The FedEx LTD Plan pays benefits once STD benefits are exhausted. Id. at 0417. Benefits continue until the employee reaches age 65 or remains unable to perform occupational duties for 25 hours per week, whichever comes first. Id. The LTD Plan pays up to 60% of basic monthly earnings, less offsets for other sources of income. Id.

**B.   Aetna Grants STD Plan Benefits for November 7, 2014 to February 14, 2015**

On February 22, 2012, Plaintiff's primary care provider, Dr. Michael Thompson, assessed Plaintiff for right carpometacarpal ("CMC") instability, right thumb CMC pain, left IP joint pain, fifth metacarpophalangeal joint pain sprain, and left thumb IP joint arthritis. Id. at 0013. On March 16, 2012, Dr. Thompson performed various thumb and wrist surgery on Plaintiff. Id. at 0036. By November 16, 2012, Plaintiff still had left-handed multiple joint arthritis, and Dr. Thompson

4

recommended he take six to eight weeks off of work and refrain from lifting more than five pounds or repetitively pinching, gripping, or grasping. _Id._ at 0123. On October 31, 2014, Plaintiff had his first full day of absence from work. _Id._ at 0177, 210.

Plaintiff received benefits under the STD Plan for the period of November 7, 2014 to February 14, 2015. _Id._ at 0004. He substantiated his claim with clinical documentation from Dr. Bruno Seeman, occupational medicine. Dr. Seeman discharged Plaintiff to return to work on October 30, 2014 with restrictions to not use his hands. _Id._ at 0180. On November 4, 2014, Dr. Seeman instructed Plaintiff to return to work with an added restriction of "no gripping and grasping," and provided an expected maximum medical improvement ("MMI") of December 31, 2014. _Id._ at 0184. Aetna approved the STD Plan benefits due to his "inability to perform heavy cores of his job . . . due to work related wrist injuries." _Id._ at 0247.

**C.** **Aetna Denies STD Plan Benefits for February 15, 2015 to May 7, 2015**

Plaintiff presented to Dr. Enass Rickards, hand surgeon, on January 22, 2015, complaining of bilateral hand pain, numbness, and weakness. _Id._ at 0194. A hand and wrist examination showed normal range of motion, strength, and sensations; the X-rays revealed a well-healed metacarpal trapezial fusion, but were otherwise negative. _Id._ at 0195. Dr. Rickards

1 recommended an EMG nerve conduction study to rule out
2 carpal tunnel syndrome, and recommended Plaintiff
3 return to modified duties at work, with no lifting
4 greater than three pounds, no repetitive keying, or
5 typing more than three hours a day.  Id. at 0195-96.

6    Plaintiff returned to Dr. Rickards on February 19,
7 2015, complaining of multiple joint pain and ligament
8 tears.  Id. at 0197.  His EMG nerve conduction study
9 was normal, and there was no change from his prior hand
10 examination.  Id.  Dr. Rickards diagnosed Plaintiff
11 with bilateral hand arthritis.  Id. at 0197-98.  He was
12 able to work modified duty so long as a rheumatologist
13 evaluated him to rule out polyarthropathy (a type of
14 arthritis).  Id.

15    On March 4, 2015, Dr. Michael Wheatley, an Aetna-
16 retained physician, conducted a peer review of
17 Plaintiff's medical records.  He noted that Plaintiff
18 self-reported pain in multiple joints, but the hand and
19 wrist examination, X-ray, and nerve conduction test
20 were all normal.  Id. at 0200-01.  Dr. Wheatley
21 concluded that Plaintiff had not presented significant
22 objective clinical documentation that he could not
23 perform the essential duty of lifting up to 75 pounds
24 at his job.  Id.

25    Plaintiff submitted a claim for unpaid STD Plan
26 benefits for the period beginning February 15, 2015,
27 which Aetna denied on March 4, 2015.  Id. at 0006.
28 Aetna reviewed November 2014 - February 2015 visits

with his treating health care providers Dr. Seeman and
Dr. Rickards, workers compensation documented notes,
and Dr. Wheatley's report.   Id.   Plaintiff presented no
"significant objective clinical findings revealing a
functional impairment that would preclude [Plaintiff]
from performing the essential job duties of [his] own
occupation, which is of a heavy  demand level[,]
lifting up to 75 pounds."   Id.   Further, there were no
abnormal findings from orthopedic, neurologic, or
neuromuscular exams precluding work in a heavy demand
occupation.   Id. at 0006.   Aetna reminded Plaintiff
that pain, without significant objective findings, is
not proof of disability.   Id. at 0007.

**D.   Plaintiff Visits His Treating Physicians**

On March 16, 2015, Dr. David Daugherty saw
Plaintiff.   Plaintiff complained of bilateral hand pain
with numbness, burning, and tingling aggravated by
typing and lifting/carrying 75-150 pounds at work.   Id.
at 0149.   Upon physical examination, he had full range
of motion in his elbow, forearm, and wrist, except for
the right thumb.   Id. at 0151.   He had no Tinel's sign
at the ulnar nerve or the median nerve at the elbow or
wrist.   Id.   Dr. Daugherty concluded that Plaintiff's
hand osteoarthritis at the thumb CMC joint was related
to overuse and repetitive occupational stress.   Id. at
0152.   Plaintiff had "[t]emporary partial disability
from today until [the] next appointment," and Dr.
Daugherty recommended limiting lifting to three pounds

and no forceful gripping, grasping, pushing, or pulling with both hands. Id. at 0153.

During a follow-up visit on April 13, 2015, his physical exam was essentially unchanged. Id. at 0156. Dr. Daugherty recommended resection arthroplasty of the thumb CMC joint to treat the left thumb CMC joint arthrosis. Id. at 0157. He diagnosed Plaintiff with bilateral thumb CMC joint osteoarthritis, left thumb MP joint osteoarthritis, and bilateral hand dupuytren's contracture (not work-related). Id. at 0157. The same temporary partial disability work status was indicated. Id. at 0157.

On April 24, 2015, Dr. Martin Mendelssohn, orthopedic surgeon, performed a peer review of Plaintiff's claim for Aetna. Plaintiff continued to be symptomatic, and suffer IP joint pain, numbness and tingling in both hands. Id. at 0206. But Plaintiff's electrodiagnostic studies were negative, as were his Tinel's and Phalen's sign. Id. In spite of Plaintiff's subjective pain complaints, the clinical exams did not show "significant objective clinical documentation revealing a functional impairment that would preclude him from performing the essential duties of his heavy demand lifting job." Id. at 0206-07.

**E.** **Aetna Denies Plaintiff's Appeal**

Plaintiff appealed Aetna's March 2015 denial. Aetna denied the appeal on May 27, 2015. Id. at 0208. Upon review, Aetna considered documentation from

Plaintiff's visits to Dr. Thompson back in 2012, as
well as the March and April 2015 visits with Dr.
Daugherty.  Aetna noted that Dr. Rickards's January 22,
2015 exam findings did not support the recommended work
restrictions.  Id. at 0002.  Further, Aetna noted
negative tests and studies in conflict with Plaintiff's
complaints of bilateral hand pain, numbness, and
burning.  Id.  Aetna concluded that there were no
"significant objective findings" to substantiate
Plaintiff's functional impairment that would impede him
from performing his heavy job duties.  Id.

## II. CONCLUSIONS OF LAW

Under Section 502 of ERISA, a beneficiary or plan
participant may sue in federal court "to recover
benefits due to him under the terms of his plan, to
enforce his rights under the terms of the plan, or to
clarify his rights to future benefits under the terms
of the plan."  29 U.S.C. § 1132(a)(1)(B).

### A.  Standard of Review

Before deciding whether Plaintiff's STD Plan
benefits were properly denied, the threshold issue is
whether the de novo or abuse of discretion standard of
review applies.

In ERISA actions, the Supreme Court has used two
standards of review: the de novo standard and the abuse
of discretion standard.  Firestone Tire & Rubber Co. v.
Bruch, 489 U.S. 101, 115 (1989).  A presumption exists
that an ERISA plan administrator's decision denying

benefits will be reviewed under the de novo standard.
Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955,
963 (9th Cir. 2006).  However, the abuse of discretion
standard may apply if the administrator can establish
that the plan at issue contains a valid grant of
discretion to the insurer.  Id. at 963.  "[T]he plan
must unambiguously provide discretion to the
administrator."  Id.

Plaintiff argues that de novo review applies, as
California Insurance Code § 10110.6 voids any language
conferring "discretionary authority" in an ERISA
policy.[2]  This applies to any claims accruing after the
statute's effective date, January 1, 2012.[3]  Pl.'s
Opening Br. 8:16–17.  Section 10110.6(a) provides, in
relevant part:

> If a policy, contract, certificate, or agreement
> offered, issued, delivered, or renewed, whether
> or not in California, that provides or funds
> life insurance or disability insurance coverage
> for any California resident contains a provision

---

[2] The discretionary clause in the STD Plan that Plaintiff
claims section 10110.6 voids is: "[t]he Claims Paying
Administrator shall, subject to the requirements of the Code and
ERISA, be empowered to interpret the Plan's provisions in its
sole and exclusive discretion in accordance with its terms with
respect to matters properly brought before it . . . including,
but not limited to, matters relating to the eligibility of a
claimant for benefits under the Plan."  A.R. at 0501.

[3] Aetna does not dispute that Plaintiff's claim accrued when
benefits were denied in March 2015, well after January 1, 2012.
Compare Pl.'s Opening Br. 8:27, with Defs.' Opening Trial Br. 12–
13.

that reserves discretionary authority[4] to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

By contrast, Aetna argues that the abuse of discretion standard should apply, because the STD Plan very clearly grants Aetna discretionary authority to interpret the Plan's provisions and eligibility matters. Defs.' Opening Trial Br. 13:3-6.

Plaintiff's argument is well-taken. District courts sitting in this circuit have overwhelmingly concluded that section 10110.6 voids any grant of discretionary authority in an insurance policy, thus requiring the court to apply the de novo standard. Hodjati v. Aetna Life Ins. Co., No. CV 13-05021 SVW, 2014 WL 7466977, at *12 (C.D. Cal. Dec. 29, 2014)(section 10110.6 voids a policy vesting Aetna with discretionary authority to determine benefits eligibility and construe the plan terms).[5]  It would

---

[4] Section 10110.6(c) further defines "discretionary authority" as: "a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court."

[5] See Snyder v. Unum Life Ins. Co. Of Am., CV 13-07522 BRO (Rzx), 2014 WL 7734715, at *11 (C.D. Cal. Oct. 28, 2014); Gonda v. The Permanente Med. Grp. Inc., 10 F. Supp. 3d 1091, 1093 (N.D. Cal. 2014) (group disability insurance policy discretionary clause voided by section 10110.6 and de novo standard thus

stand to reason that the Court should not hesitate to
apply de novo review.  Nevertheless, the issue of which
standard of review to apply after passage of section
10110.6 is further complicated by ERISA preemption.

      1.   ERISA Preemption of California Insurance Code §
           10110.6

     In spite of section 10110.6's ability to void
discretionary clauses like the one here, Aetna turns to
ERISA's preemption jurisprudence for more nuanced
arguments.  Plaintiff avers that section 10110.6 is
rescued from preemption under the "Savings Clause" in
ERISA, 29 U.S.C. § 1144(b)(2)(A), which saves from
preemption any state law which "regulates insurance,
banking, or securities."  Pl.'s Opening Br. 9:26-27.
Aetna responds that the "Deemer Clause" in ERISA, 29
U.S.C. § 1144(b)(2)(B),[6] acts as an exception to the
Savings Clause and prohibits state law from regulating
self-funded plans, like the one here, as insurance

_____

applies); <u>Felix v. Metro. Life Ins. Co.</u>, No. CV 14-3971-R, 2015
WL 38666760, at *4 (C.D. Cal. June 19, 2015); <u>Curran v. United of
Omaha Life Ins. Co.</u>, 38 F. Supp. 3d 1184, 1191 (S.D. Cal. 2014);
<u>Polnicky v. Liberty Life Assurance Co. of Boston</u>, 999 F. Supp. 2d
1144, 1150 (N.D. Cal. 2013); <u>Jahn-Derian v. Metro. Life Ins. Co.</u>,
CV 13-7221 FMO (SHx), 2015 WL 900717, at *5 (C.D. Cal. Mar. 3,
2015); <u>Williby v. Aetna Life Ins. Co.</u>, 2:14-cv-04203 CBM(MRWx),
2015 WL 5155499, at *5 (C.D. Cal. Aug. 31, 2015).

    [6] Section 1144(b)(2)(B) provides: "[n]either an employee
benefit plan . . . nor any trust established under such a plan,
shall be deemed to be an insurance company or other insurer,
bank, trust company, or investment company or to be engaged in
the business of insurance or banking for purposes of any law of
any State purporting to regulate insurance companies, insurance
contracts, banks, trust companies, or investment companies."

companies.  Defs.' Resp. Br. 4:17-18.

To be saved from preemption under the Savings Clause, a state law "(1) must be specifically directed towards entities engaged in insurance; and (2) must substantially affect the risk pooling arrangement between the insurer and the insured."  Standard Ins. Co. v. Morrison, 584 F.3d 837, 842 (9th Cir. 2009). The Ninth Circuit has held that the "practice of disapproving discretionary clauses" is saved from preemption under the Savings Clause.  Morrison, 584 F.3d at 845.

Plaintiff is correct that section 10110.6 is rescued under the Savings Clause two-part test, at least to the extent that it voids ERISA policy discretionary clauses.  First, it is a state-mandated insurance policy provision specifically directed towards insurance entities.  See Morrison, 584 F.3d at 842 ("[i]t is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies.") Second, section 10110.6 "substantially affect[s] the risk pooling arrangement between the insurer and the insured" created by a discretionary clause.  Jahn-Derian, 2015 WL 900717, at *4.  However, the narrower issue—of whether section 10110.6 voids a discretionary clause in a self-funded ERISA plan or is preempted by the Deemer Clause—is less clearly decided and thus complicates the Court's analysis.

1        In <u>FMC Corp v. Holliday</u>, 498 U.S. 52, 61 (1990),
2   the Supreme Court held that the Deemer Clause exempts
3   self-funded ERISA plans from state laws that regulate
4   insurance under the Saving Clause.   In other words,
5   although the Savings Clause salvages section 10110.6
6   from preemption, the Deemer Clause ultimately preempts
7   section 10110.6 to the extent it tries to regulate a
8   self-funded ERISA plan.   "Self-funded ERISA plans are
9   exempt from state regulation insofar as that regulation
10  "relate[s] to" the plans."   <u>Id</u>.   Indeed, many circuit
11  courts and district courts have respected the <u>FMC Corp</u>
12  holding that ERISA preempts state laws regulating self-
13  funded plans.[7]

14       In spite of <u>FMC Corp</u>'s applicability, two district
15  courts in this circuit have directly considered
16  "whether the application of section 10110.6 to self-
17  funded plans is preempted by ERISA."   <u>Accord</u> <u>Thomas v.</u>
18  <u>Aetna Life Ins. Co.</u>, 2:15-cv-01112-JAM-KJN, 2016 WL
19  4368110, at *6 (E.D. Cal. Aug. 15, 2016).   Both have
20

21       [7] <u>See</u> <u>Greany v. W. Farm Bureau Life Ins. Co.</u>, 973 F.2d 812,
22  818 (9th Cir. 1992); <u>Provident Life and Accident Ins. Co. v.</u>
    <u>Linthicum</u>, 930 F.2d 14, 16 (8th Cir. 1991)("[<u>FMC Corp</u>] held that
23  ERISA applied to self-funded benefit plans and pre-empted
    application of a state anti-subrogation law"); <u>see</u> <u>also</u> <u>Belshe v.</u>
24  <u>Laborers Health & Welfare Trust Fund for N. Cal.</u>, 876 F. Supp.
    216, 220 (N.D. Cal. 1994) (California Welfare & Institutions Code
25  section—that invalidated any provisions prohibiting subrogation
    by a beneficiary to Medi-Cal—was beyond the reach of the Savings
26  Clause, as defendants' medical plan was self-funded); <u>Hampton</u>
    <u>Indus. Inc. v. Sparrow</u>, 981 F.2d 726, 727 (4th Cir. 1992) (North
27  Carolina statute which limited medical provider recovery from
    injured person's settlement funds in self-funded health benefits
28  plan was preempted under the Deemer Clause).

concluded section 10110.6 is not preempted, and thus de novo review applies.

In _Thomas_, the court reviewed the same FedEx STD Plan at issue here, self-funded by FedEx and administered by Aetna.  The court concluded that section 10110.6 applies to self-funded plans just as equally as it applies to insured plans.  _Id._ at *7. The court primarily relied on the reasoning in _Williby v. Aetna Life Ins. Co._, 2:14-cv-04203 CBM(MRWx), 2015 WL 5145499 (C.D. Cal. Aug. 31, 2015), another court confronted with the same issue, and offered two reasons for its holding.  First, the plain language of section 10110.6 applies to "contracts" like self-funded ERISA plans.  _Id._ at *6.  Second, the legislative history of section 10110.6 was largely concerned with regulating unnecessarily draconian discretionary clauses, even in self-funded plans.  _Id._ at *6.

The Court finds that ERISA preempts section 10110.6 because section 10110.6 regulates FedEx's self-funded plan. Notwithstanding _Thomas_ and _Williby_, the Ninth Circuit has yet to speak on this precise issue.  Until then, the Court's decision today does not rise and fall with mere persuasive authority from two district courts in this circuit.  And neither _Williby_ nor _Thomas_ provide a compelling reason to disagree with _FMC Corp_. In _Williby_, the court failed to acknowledge _FMC Corp_'s applicability, focusing instead on the narrow issue of whether section 10110.6 applies to not just contracts

and insurance policies, but also to ERISA "plan documents." 2015 WL 5145499, at *5. As to that specific issue, the court noted that no court has yet decided whether section 10110.6 applies to ERISA plan documents "in the context of self-funded plans." Here, unlike <u>Williby</u>, the Court is not deciding whether section 10110.6's language embraces ERISA plan documents, but rather is trying to reconcile the tension between section 10110.6 and a self-funded ERISA plan. See also <u>Thomas</u>, 2016 WL 4368110, at *4 (failing to discuss <u>FMC Corp</u> but focusing instead on the fact that no district court has held that ERISA preempts section 10110.6).

Plaintiff's argument, that courts in this circuit consistently find that section 10110.6 voids any discretionary clause whatsoever, is overstated. See <u>Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan</u> SACV 12-01905-CJC (RNBx), 2014 WL 979191, at *9 (C.D. Cal. Mar. 12, 2014) (abuse of discretion applies where there is a discretionary clause under both the plan and the Summary Plan Description allowing the administrator to determine plan benefits eligibility, and section 10110.6 voids policies, not benefits plan clauses). And in <u>Constantino v. Aetna Life Ins. Co.</u>, SACV 12-0921-JGB (Anx), 2014 WL 5023222, at *4 (C.D. Cal. Oct. 8, 2014) the court applied abuse of discretion review to the same self-funded FedEx STD Plan because of its

discretionary clause allowing Aetna to interpret the
plan provisions and factual matters of eligibility, and
because FedEx paid benefits while Aetna was the claims-
paying administrator.

Here, the STD Plan unambiguously affords Aetna, the
claims paying administrator, discretion to "interpret
the Plan's provisions in its sole and exclusive
discretion . . . including, but not limited to, matters
relating to the eligibility of a claimant for benefits
under the Plan."  A.R. at 0501; <u>Abatie</u>, 458 F.3d at
963.  And even if the Court were to accept the argument
that section 10110.6 somehow voids the discretionary
clause, the summary of plan benefits clearly states
that the STD Plan is self-funded.  A.R. at 0344, 0417
("[u]nder self-funded plans, FedEx pays benefits out of
its own funds.")

Because the clause clearly grants discretion to
Aetna, and only two non-binding cases have
unconvincingly decided that section 10110.6 voids a
self-funded plan's discretionary clause, the Court
declines to deviate from <u>FMC Corp.</u> and finds that
because ERISA preempts section 10110.6 under the Deemer
Clause, section 10110.6 does not void the discretionary
clause in the self-funded ERISA plan.  Accordingly, the
Court reviews the denial of Plaintiff's STD Plan
benefits under the abuse of discretion standard.

**B.   <u>Denial of Plaintiff's Benefits under the STD Plan</u>**

The Court next applies the abuse of discretion

17

standard to determine whether Aetna properly denied

Plaintiff benefits under the STD Plan for the period of

February 15, 2015 to May 7, 2015.

The abuse of discretion standard is treated

analogously to the "arbitrary and capricious" standard,

Snow v. Standard Ins. Co., 87 F.3d 327 (9th Cir. 1996),

overruled on other grounds by Kearney v. Standard Ins.

Co., 175 F.3d 1084, 1089-90 (9th Cir. 1999) (en banc).

Under the abuse of discretion standard, the court will

not disturb a plan administrator's decision if it is

reasonable.   See Barnett v. Kaiser Found. Health Plan,

32 F.3d 413, 416 (9th Cir. 1994).   ERISA Plan

administrators abuse their discretion if (1) they

render decisions without any explanation; (2) construe

provisions of a plan in a way that conflicts with the

plain language of the plan; or (3) rely on clearly

erroneous findings of fact.   Taft v. Equitable life

Assurance Soc'y, 9 F.3d 1469, 1472-73 (9th Cir. 1994).

1.   Conflict of Interest

Where the same entity funding an ERISA plan also

evaluates claims under the plan, then the plan

administrator has a "structural conflict of interest."

Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623,

630 (9th Cir. 2009).   If there is a potential

structural conflict of interest, then the court must

weigh it as an additional factor in the abuse-of-

discretion calculus.   Id. at 631.

This case presents no structural conflict of

interest.   Plaintiff has not raised this argument in
any of his trial briefs.   Moreover, Aetna is the claims
paying administrator, while FedEx pays for the STD
benefits, which are self-funded.   A.R. at 0417, 0499.
Castillo v. Cigna Healthcare, 11 F. App'x 945, 950 (9th
Cir. 2001) (no apparent structural conflict of interest
where AT&T authorized Cigna to administer claims under
the plan while AT&T self-funded the plan).

  2.   Whether Aetna Rendered its Decision Without
    Explanation

  Aetna argues that it properly instructed Plaintiff
of his failure to provide "significant objective
findings" evidencing a functional impairment that would
prevent him from doing his "own occupation."   Defs.'
Opening Trial Br. 14:13-14.   Plaintiff argues that
Aetna's mere writing a denial letter does not immunize
it from liability.   Pl's Reply Br. 2:6-8.

  "If benefits are denied in whole or in part, the
reason for the denial must be stated in reasonably
clear language, with specific reference to the plan
provisions that form the basis for the denial."   Booton
v. Lockheed Med. Benefits Plan, 110 F.3d 1461, 1463
(9th Cir. 1997).   In both the initial March 5 denial
letter and the May 27 denial of appeal letter, Aetna
did just that, citing plan provisions defining
"occupational disability" and pointing to the lack of
"significant objective findings" required to
substantiate an occupational disability.   A.R. at 0001-

02, 0006-07.  Indeed, Aetna thoroughly reviewed and summarized findings from Plaintiff's submitted medical documentation, advising him about the "significant objective findings" requirement; that is, tests or medical exams revealing a significant anatomical abnormality separate and apart from the individual's symptoms.  Id. at 0545-46.  For instance, Aetna explained that although Dr. Rickards placed Plaintiff on restrictions of "no lifting greater than 3 pounds bilaterally and no repetitive keying or typing," the "exam findings did not support the recommended restrictions" because the EMG and nerve conduction study were normal.  Id; Cf. Kochenderfer v. Reliance Standard Life Ins. Co., 2009 WL 4722831, at *9 (S.D. Cal. Dec. 4, 2009) ("[a]lthough this letter may not stand at the pinnacle of clarity, its explanation of the policies and disability definitions, [and] description of plaintiff's condition . . . was sufficient.")

It takes an egregiously cursory denial letter to show the decision was rendered without explanation.  Booton, 110 F.3d at 1464 (Aetna ignored Plaintiff's argument that her non-injured back teeth required injury-related work, a "concept so straightforward that anyone . . . with a modicum of intelligence would have been bound to grasp it.")  Here, unlike Booton, Aetna combed through the proffered medical records to see if Plaintiff's argument—that he could not lift over 75

pounds—held any water. 110 F.3d 1461, 1463 (9th Cir.
1997). Aetna pointed out various unremarkable findings
and tests, like negative electrodiagnostic studies and
lack of significant deficits in range of motion or
muscle strength, and contrasted them with the STD Plan
rule that "pain, without significant objective
findings, is not proof of disability." A.R. at 0002.
Finally, Aetna gave Plaintiff an extension to gather
more evidence in support of his claim. Id. at 0161-62;
but see Booton, 110 F.3d at 1464 (Aetna ignored
physicians' statements that they had more information
to substantiate plaintiff's claim, and did not request
more documentation). Thus, Aetna did not render a
decision without explanation in either its initial
denial or denial of appeal letters.

    3.   Whether Aetna's Decision Conflicts with the
         Plain Language of the Plan

    To determine whether the administrator reached a
decision in a way that conflicts with the plain
language of the plan, the court should not determine
"whose interpretation of the plan . . . is most
persuasive, but whether the [administrator's]
interpretation is unreasonable." Canseco v. Constr.
Laborers Pension Trust for S. Cal., 93 F.3d 600, 606
(9th Cir. 1996).

    Plaintiff focuses his attention on the "own
occupation" standard. Plaintiff does not provide a
specific definition of "own occupation," but the Court

surmises that it is the  "medically-determinable
physical impairment or [m]ental [i]mpairment, to
perform the duties of his regular occupation . . . "
A.R. at 0548.  The plain language of the plan does not
specify whether the duties of one's "own occupation"
means that Plaintiff needed to show that he could not
perform all, none, or some of his listed "essential job
functions."  While the "skills and abilities required"
section of his job description mandates that Plaintiff
be able to lift and maneuver packages of 75 pounds,
this skill is not listed as an essential part of
Plaintiff's job.  Id. at 0215-16; cf. Pl.'s Opening Br.
2:2 ("benefits are due if the employee is unable to
perform the substantial and material duties of his or
her own occupation.") (emphasis added).  And at the
bench trial, counsel for Defendant emphasized that
Plaintiff's job as a Senior Service Agent is typically
a customer service job.

Regardless of whether the lifting 75 pounds
requirement is a substantial and material part of
Plaintiff's job, Aetna did not contradict the plain
language of the "own occupation" standard because Aetna
weighed Plaintiff's subjective complaints of multiple
joint pains and a previous bilateral hand arthritis
diagnosis against recent documentation of normal
strength and sensation, none of which was a "medical
impairment" that would preclude him from lifting up to
75 pounds.  Jones v. Fed. Express Corp., 984 F. Supp.

2d 1271, 1276 (M.D. Fla. 2013) (Plaintiff was not
disabled under identical "occupational disability"
definition in FedEx plan where the overall medical
documentation lacked abnormalities and tests showed
mild or minimal back pain).

Aetna also followed the STD Plan's language that
"pain, without significant objective findings, is not
proof of disability."  A.R. at 0422; see id. at 0002
("[plaintiff] reported bilateral hand pain with
numbness, burning and tingling . . . [but] [t]here was
no evidence of any significant deficits of motion or
muscle strength"); id. at 0006 ("[plaintiff has] self-
reported complaint of pain in multiple joints . . .
[but] [t]here was no documentation of any loss of
muscle tone or atrophy.")  Thus, Aetna's decision was
not in conflict with the STD Plan's plain language.

> 4.   Whether the Decision Relied on Clearly
>       Erroneous Findings of Fact

A decision is "clearly erroneous" when the
reviewing body is left with the "definite and firm
conviction that a mistake has been committed." Boyd v.
Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d
1173, 1179 (9th Cir. 2005).

> a.   *Plaintiff's Treating Physicians*

Plaintiff contends that Aetna ignored every one of
his doctors' decisions to restrict Plaintiff to lifting
below 75 pounds and their unanimous agreement that he
could not work due to permanent thumb/wrist injuries.

Pl.'s Opening Br. 12:4-7.   "[P]lan administrators are not obliged to accord special deference to the opinions of treating physicians." <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 825 (2003).   While a plan administrator abuses its discretion if it dismisses a treating physician's opinion as insufficient absent conflicting, reliable evidence, <u>Farhat v. Harford Life & Acc. Ins. Co.</u>, 439 F. Supp. 2d 957, 973 (N.D. Cal. 2006), the court cannot impose a "discrete burden of explanation of evidence" on a plan administrator when they credit reliable evidence in conflict with a treating physician's evaluation.   <u>Black & Decker</u>, 548 U.S. at 834.

Aetna did not wholly ignore Plaintiff's treating physicians' medical findings.   When Plaintiff saw Dr. Rickards on January 22, 2015, he stated that his bilateral hand pain and numbness had not improved. A.R. at 0194.   But upon physical examination, Dr. Rickards noted no deformities, normal range of motion and wrist strength, and normal sensations.   <u>Id.</u> at 0195.   Plaintiff could return to modified work duties, with lifting no greater than three pounds, and no repetitive keying or typing for more than three hours per day.   <u>Id.</u> At the February 19 follow-up visit, Dr. Rickards noted that he underwent an EMG nerve conduction study with normal results, and that he would be able to work modified duty with only the following restriction: a rheumatology consult to rule out

polyarthropathy, a type of arthritis.  Id. at 0198.

Nothing was said about Plaintiff's definitive inability

to stop working or other severe lifting restrictions.

     This set of facts is markedly different from James

v. AT&T West Disability Benefits Program, 41 F. Supp.

3d. 849, 874-75 (N.D. Cal. 2014), where at least two of

the plaintiff's treating physicians stated that she

would not be able to work again due to her chronic pain

and depression, and the initial denial letter did not

even acknowledge this critical evidence.  In its May 27

letter upholding denial of Plaintiff's STD Plan

benefits, Aetna dutifully recounted these visits,

concluding that Plaintiff did not have a significant

functional impairment impeding him from performing his

job duties.  A.R. at 0001-03.  Unlike the treating

physicians in James, Plaintiff's physicians permitted

Plaintiff to return to work with adjusted

modifications—these modified work duties did not

conclusively show Plaintiff was disabled under the STD

Plan terms.

     Moreover, Aetna properly considered "reliable,

conflicting" evidence, in the form of Dr. Wheatley's

and Dr. Mendelssohn's peer reviews.[8]  Dr. Wheatley noted

_____

     [8] The Court disagrees with Plaintiff that Dr. Mendelssohn
was improperly biased.  Plaintiff baldly asserts that Dr.
Mendelssohn has used boilerplate language—that "[the] functional
impairment cannot be substantiated—in at least six cases
Plaintiff's Counsel has recently litigated in the Central
District.  Pl.'s Opening Br. 13:18-19.  This argument is borne
out of Plaintiff's insistence that Aetna place a premium on

that Dr. Rickards' findings of normal hand strength, sensation, and range of motion, unremarkable X-rays, and normal nerve conduction tests were in conflict with Plaintiff's self-reported multiple joint pain.  A.R. at 0200-01.[9]  And Dr. Wheatley was not required to take Dr. Rickards' one sentence recommendation—that Plaintiff return to work and lift no more than three pounds—as conclusory evidence of his disability.  <u>See</u> <u>Jones</u>, 984 F. Supp. 2d at 1277 (no abuse of discretion where defendants' peer-review physician considered, but did not exclusively rely on treating physicians' findings that plaintiff required modified work restrictions). Dr. Wheatley properly viewed Dr. Rickards' findings as a whole, weighing Plaintiff's subjective complaints against the lack of objective tests substantiating Plaintiff's claims.  <u>See</u> <u>Jordan v. Northrop Grumman Corp. Welfare Benefit Plan</u>, 370 F.3d 869, 880 (9th Cir. 2004) (claims administrator did not act arbitrarily in weighing conclusory statements from treating physicians against plan's doctors statements), <u>overruled on other grounds by</u> <u>Salomaa v. Honda Long Term Disability Plan</u>,

---

Plaintiff's subjective complaints of pain, which the Court has rejected.  The Court cannot conclude, without more, that Aetna's repeated use of Dr. Mendelssohn is sufficient to show bias and an abuse of discretion.

[9] These unremarkable tests fly in the face of Plaintiff's sweeping statement that he has "undergone several MRIs that confirmed his subjective complaints."  Pl.'s Opening Br. 13:10. Notably, Plaintiff does not point to any part of the administrative record substantiating this bald assertion.

1  642 F.3d 666 (9th Cir. 2011).

2

3        b.    *Subjective vs. Objective Evidence of*

4              *Disability*

5        Aetna's discounting of Plaintiff's subjective

6  complaints of pain was similarly neither arbitrary nor

7  capricious.  Plaintiff's medical documentation is

8  largely rife with contradictions between his self-

9  reported pain and unremarkable objective findings.

10 Compare A.R. at 0197 ("[plaintiff made] complaints of

11 multiple joint pains"), with id. ("nerve conduction

12 test was normal"), and 0198 ("no swelling, normal range

13 of motion, normal strength, and normal sensation);

14 compare A.R. at 0149 ("describes burning type pain . .

15 . aggravated by work activities such as . . . carrying

16 75-150 pounds"), with id. at 0151 ("full range of

17 motion of the elbow, forearm, wrist . . . he can make a

18 full composite fist . . . .").  Taking these

19 discrepancies as a whole, Aetna had substantial

20 evidence that Plaintiff's condition was "likely not

21 severe enough to prevent [him] from doing [his] work."

22 Jordan, 370 F.3d at 880 (no abuse of discretion where

23 subjective indications of pain were at odds with

24 plaintiff's lack of acute distress, lack of proximal

25 muscle weakness, and no observable atrophy from pain-

26 induced disuse).

27       Finally, Plaintiff has not demonstrated why the

28 Court should give extra weight to Plaintiff's

subjective evidence of pain for his garden-variety
wrist and thumb pain. <u>James</u>, 41 F. Supp. 3d. at 879
(emphasizing need to consider subjective evidence, as
plaintiff complained of "chronic pain syndrome," a
medical condition dependent on patient reports of pain
for its diagnosis). In fact, concluding otherwise
would put Aetna at odds with the plain language of the
plan: "pain, without significant objective findings, is
not proof of disability." A.R. at 0422.

Plaintiff repeatedly argues that Aetna ignored
substantial evidence because his treating physicians
resoundingly concluded that he could not lift more than
75 pounds. This not only misstates the submitted
medical record, but also conflates diagnosis with
disability.[10] As Defendants noted at the bench trial,
and the Ninth Circuit has stated: "[t]hat a person has
a true medical diagnosis does not by itself establish
disability." <u>Jordan</u>, 370 F.3d at 880. In <u>Safavi</u>, the
plaintiff made a similar argument as here—that the
defendant improperly took into account plaintiff's lack
of objective evidence, and failed to rely on
plaintiff's subjective reports of pain and her doctor's

---

[10] As Aetna indicates, Dr. Daugherty was Plaintiff's only
treating physician to suggest that Plaintiff had a temporary
partial disability and would need to limit lifting to three
pounds. A.R. at 0157. But as mentioned above, this brief
sentence from one of Plaintiff's treating physicians does not cut
against the weight of evidence that Aetna and its reviewing
physicians considered from Dr. Rickards, Dr. Seeman, and Dr.
Thompson that fail to connect the dots between Plaintiff's
diagnoses and a substantiated disability.

opinions of her disability.  493 F. Supp. 2d 1107, 1118
(C.D. Cal. 2007).  The court rejected this argument,
reasoning that were the claims administrator to pin its
reasoning on subjective pain reports, this would "shift
the discretion from the plan administrator, as the plan
requires, to [applicant's physicians] who depend for
their diagnosis on the applicants's reports to them of
pain."  Id. (quoting Jordan, 370 F.3d at 878).  Stated
differently, subjective complaints of pain conveyed to
a treating physician are inherently self-serving.

At bottom, Plaintiff asks Aetna, and now the Court,
to wholly embrace a few remarks from his treating
physicians that he could have modified work duties of
lifting no more than three pounds.  Had Aetna done so,
it would have overlooked the discrepancy between
Plaintiff's subjective complaints of pain and
Plaintiff's inconsistent objective examinations, and
the exact concern in Jordan would come home to roost:
Aetna would have improperly rubber stamped Plaintiff's
diagnosis without a clear understanding as to whether
he was actually disabled.

Accordingly, Aetna did not abuse its discretion
when it denied Plaintiff short-term disability benefits
under the STD Plan for February 15, 2015 to May 7,
2015.  Even if the Court applied the less deferential
de novo standard of review, and proceeded to "evaluate
whether the plan administrator correctly or incorrectly
denied benefits," Abatie, 458 F.3d at 963, the end

result would not change.  A claimant has the burden of proving, by a preponderance of the evidence, that he or she is disabled under the terms of the plan.  See Muniz v. Amec. Const. Mgmt., Inc., 623 F.3d 1290, 1294-95 (9th Cir. 2010).

Plaintiff failed to show that he had a medically determinable physical impairment preventing him from lifting packages over 75 pounds.  See A.R. at 0548. From his November 4, 2014 visit to Dr. Seeman, shortly after Plaintiff left work, to his visit with Dr. Daugherty in April 2015, Plaintiff's medical records from his treating physicians have consistently demonstrated normal range of motion and normal studies as to his wrist, hand, and thumb capabilities.  A.R. at 0182, 0195 ("there is 5/5 muscle strength [on the right wrist] . . . "range of motion is normal with all muscle tendon units functioning" . . . "[t]he patient has full range of motion of the elbow, forearm, wrist.")

Moreover, although Plaintiff's physicians stated that he required limited use of his wrists and hands and grasping, they nevertheless allowed him to return to work.  And only one physician, Dr. Daugherty, outright said that Plaintiff required temporary partial disability work status.  Id. at 0157.  Coupling these medical records with the STD Plan's requirements, that employee present "objective findings" and that "pain alone is not evidence of disability," the Court finds ///

1  ///

2  ///

3  that Aetna correctly denied benefits.[11]

4  **D.  Admissibility Issues**

5      1.  Dr. Thompson Report

6      Aetna objects to Plaintiff's use of "Exhibit 2," a

7  letter from Dr. Thompson detailing Plaintiff's

8  bilateral hand injuries on a June 15, 2015 visit [32-

9  1], as it is outside the administrative record and was

10 not submitted to Aetna within the appeal deadline.

11 Defs.' Resp. Br. 13:25-14:9.

12     Under the abuse of discretion standard, a court's

13 review is generally limited to "only the evidence that

14 was before the plan administrator at the time of

15 determination should be considered." Opeta v. Nw.

16 Airlines Pension Plan for Contract Emps., 484 F.3d

17 1211, 1217 (9th Cir. 2007).

18     The Court declines to consider Dr. Thompson's

19 report, as it is outside the administrative record.

20 The result would be the same even under de novo review.

21

22     [11] The parties further disagree as to whether Plaintiff
   should receive LTD Plan benefits and offset amounts.  Aetna did
23 not abuse its discretion in its denial of STD Plan benefits, and
   thus denial of benefits from February 15, 2015 to May 7, 2015 was
24 proper.  Because LTD Plan benefits do not begin until STD Plan
   benefits are exhausted; that is, once Plaintiff receives all 26
25 weeks of STD Plan benefits, the Court need not proceed with
   determining how much LTD Plan benefits Plaintiff is owed.  A.R.
26 at 0417.  Moreover, as discussed below, the Court need not reach
   the issue of offset amounts, as Aetna properly denied benefits
27 for the relevant time window.  Id. at 0418 ("STD benefits are
   reduced by any amounts [Plaintiff] receive[s] or [is] entitled to
28 receive.")

Opeta, 484 F.3d at 1217 (on de novo review, the court
must find "exceptional circumstances" to admit evidence
outside the administrative record, like complex medical
issues) (quoting Quesinberry v. Life Ins Co. Of N. Am.,
987 F.2d 1017, 1027 (4th Cir. 1993)).  Not only has
Plaintiff failed to set forth any exceptional
circumstances warranting admission, but also the report
is not germane to whether Aetna properly denied
benefits.  The June 15, 2015 report was not before
Aetna when it initially denied Plaintiff's short-term
benefits claim in March 2015, or when it denied his
appeal in May 2015.  Montour, 588 F.3d at 632 (the
court's review of Aetna's decision is limited to the
administrative record Aetna had before it).  Thus, the
Court **SUSTAINS** Defendants' objection, and Exhibit 2
will not be admitted into evidence.

    2.  Turner Declaration

    Plaintiff objects to the Declaration of Tamara K.
Turner ("Turner Declaration"), "Exhibit 3," as it is
"testimony through way of a declaration" as to the plan
terms and applicable offsets not in the administrative
record.[12]  Pl.'s Objs. To Turner Decl. 1:22-23, ECF No.
38-1.  The Turner Declaration quantifies benefits
Plaintiff received under the STD Plan for November 7,
2014 to February 14, 2015 and benefits denied for

---

[12] As noted by counsel for Defendants at this bench trial,
specific offset amounts were not included in the administrative
record, as this determination was outside Aetna's
responsibilities.

February 15, 2015 to May 7, 2015, per the Manager of
Human Resources in the Benefits Planning and Management
Department.   Turner Decl. ¶ 2.

Because Plaintiff was properly denied STD Plan
benefits and thus not owed benefits from February 15,
2015 to May 7, 2015, quantification of related offsets
and this objection is moot.  <u>See</u> A.R. at 0417 ("STD
benefits are [offset] by any amounts you receive . . .
from[] workers' compensation [etc.]").   Accordingly,
the Court **SUSTAINS** Plaintiff's Objection to the
Declaration of Tamara K. Turner **as MOOT** [37-1], and
Exhibit 3 will not be admitted into evidence.

### III. CONCLUSION

Plaintiff has failed to show that Aetna abused its
discretion when it denied STD Plan benefits from
February 15, 2015 to May 7, 2015.   Therefore, it is
**HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment be
entered in favor of Defendants.


**IT IS SO ORDERED.**


DATED: November 30, 2016      s/ RONALD S.W. LEW

                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge